# UNITED STATES DISTRICT COURT

### for the

### Middle District of Florida ▾

### Orlando Division

| | | |
|---|---|---|
| Darlene M. Galloway | ) | Case No. _____ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |
| | ) | |
| -v- | ) | |
| Joseph Chrisopher Collins, Chief Unites States Probation Officer For The Middle District Of Florida | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |

2021 DEC 30  PM 1: 53  FILED

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

####    A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Darlene M. Galloway |
| Street Address | Post Office Box 560605 |
| City and County | Orlando, Orange County |
| State and Zip Code | Florida 32856-0605 |
| Telephone Number | 321-287-3878 |
| E-mail Address | dmgway@aol.com |

####    B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Joseph Christopher Collins |
| Job or Title *(if known)* | Chief United States Probation Officer, Middle District of Florida |
| Street Address | 3036 S. Falkenburg Road |
| City and County | Riverview, Hillsborough |
| State and Zip Code | Florida 33578 |
| Telephone Number | 813-301-5600 |
| E-mail Address *(if known)* | joe_collins@flmp.uscourts.gov |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. sec 2000e, and Title I, Civil Rights Act of 1991, 42 U.S.C. sec. 1981a and 5 U.S.C. sec 2302(b)

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

   a.   If the plaintiff is an individual

   The plaintiff, *(name)* _____ , is a citizen of the
   State of *(name)* _____ .

   b.   If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated
   under the laws of the State of *(name)* _____ ,
   and has its principal place of business in the State of *(name)* _____
   _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

   a.   If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of
   the State of *(name)* _____ . Or is a citizen of
   *(foreign nation)* _____ .

    b.    **If the defendant is a corporation**

The defendant, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    **The Amount in Controversy**

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

In 2014, the Plaintiff filed a Complaint of Discrimination in the Middle District of Florida based on race, gender and age (a Black female over age forty). During the pendency of the claim, the Complaint was amdended to include Retaliation. At the final Hearing, the Court was also made aware of sexual harrassent targeted at the Plaintiff. The Court ruled agaist the Plaintiff citing that all of the Defendants were also Black people, erroneously believing that Black people do not discriminate against other Black people. No ruling was made on the other claims. The Eleventh Circuit declined to hear the case. From June 2015, to April 23, 2021, the Plaintiff endured more retaliation and exclusion. The Court was not notified out of fear that the Court would again take no actiion and only enbolden the perpetrators to become even more hostile towards the Plaintiff. *See Attached Pages.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

As a result of the unlawful practices of retaliation, worplace harrassment and a hostile work environment caused by the Defendant, the Plaintiff was not afforded an opportunity for career advancement; was denied increased wages and annual STEP increases based on the advance position's pay grade; free parking and training opportunities from at least June 2015 to April 23, 2021. Additionally, the Plaintiff retired earlier than the desired date of November 11, 2022, due to the hostile work environment created by the Defendant. As of the date of this Court filing, the Plaintiff is still suffering emotional distress, mental anguish and loss of enjoyment of life caused by the Defendat's actions and the Court's inaction. The Plaintiff is asking the Court to provide financial relief to the

Plaintiff in the amount of $100,000 for mental aguish, $100,000 for emotional distress, $100,000 for loss of enjoyment of life, $100,000 for denied wage increases and parking fees reimbursement and $165,000 for loss of income due to early retirement as recovery for punitive or exemplary damages. The Plaintiff is also requesting a retirement salary adjustment to reflect a corrected high three years of salary and back pay starting from April 23, 2021. Additionally, the Court is asked to require the Defenndant to remove all retaliatory statements from the Plaintiff's Annual Appraisals for the reveiw periods from July 1, 2012 to June 30, 2013; July 1, 2013 to June 30, 2014; July 1, 2014 to June 30 2015; and July 1, 2015 to June 30, 2016.

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   12/30/2021

Signature of Plaintiff

Printed Name of Plaintiff   Darlene M. Galloway

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney   _____

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

Street Address   _____

State and Zip Code   _____

Telephone Number   _____

E-mail Address   _____

CASE No.:

GALLOWAY v COLLINS, CUSPO

STATEMENT OF CLAIM ATTACHMENTS

On October 6, 2014, the Plaintiff, Darlene M. Galloway, filed an Employee Dispute Resolution (EDR) Complaint of Discrimination in the Middle District of Florida against the Defendant, Joseph Christopher Collins, based on race, age and gender. On May 6, 2015, an Addendum to the EDR was filed by the Plaintiff advising the Court of continued discrimination and retaliation. On June 10, 2015, the Court ruled against the Plaintiff and concluded that the Plaintiff did not prove discrimination. Due to this ruling, the Defendant continued to foster an environment of hostility and retaliation by continuing to hire and promote staff at the probation office based on close personal relationships between staff, supervisors, and administrators. Because of those inappropriate relationships, the most qualified candidates were less likely to be selected for promotions.

1. Since the Plaintiff sought career development guidance by questioning the selection of the Defendant to appoint a much less qualified Indian American female over the Plaintiff for the position of Senior United States Probation Officer on July 10, 2013, blatant and subtle negative comments were placed on the Plaintiff's annual Performance Appraisals each subsequent year of employment with the agency.

2. Credit for work performed by the Plaintiff was not recognized by the supervisors and administrators the same as other employees. The reviews and actions of the supervisors and administrators were clearly done with intent to smear the Plaintiff's professional reputation as a cover for unfair and discriminatory employment practices.

3. In conversations with a former United States Probation Officer, the Plaintiff was advised that the former employee had been solicited to apply for a promotion to Senior United States Probation Officer because their age and years of experience made them competitive with the Plaintiff.

4. Co-workers warned the Plaintiff to be careful because "management was out to get her."

5. A former supervisor stated the Plaintiff may have to wait until a new Chief United States Probation Officer is appointed to receive a promotion, indicating that he was aware of the Defendant's plan to never promote the Plaintiff.

6. On July 13, 2015, the Defendant met with the Plaintiff in Orlando for what he claimed was a discussion about "moving forward" following the EDR Complaint ruling. During the meeting, the Defendant stated that the Plaintiff did very well in the last interview. He stated that he was aware that a discrimination Complaint had been filed years earlier by a Black male who was subsequently promoted. The Defendant stated that he selected Joseph Wagoner to the position of Senior

United States Probation Officer over the Plaintiff because he was "not going to reward bad behavior" (referring to the EDR Complaint that was filed by the Plaintiff). The Defendant further stated that the Plaintiff could have and should have already been promoted based on the Plaintiff's resume, experience, and excellent work history. He again stated he was "not going to reward bad behavior."

7. On July 13, 2015, the Defendant stated to the Plaintiff that the Court had been advised of him promoting one of his personal associates because she had been described as a person with whom he had an intimate relationship. The Defendant stated that he had known the associate for twelve or thirteen years and they were just friends. The Defendant advised that he knew the associate's parents and they all laughed when he told them the Court was advised that they had an intimate relationship. The Defendant stated that associate had much more experience than the Plaintiff, which was not true.

8. During the July 13, 2015, meeting there were no suggestions made by the Defendant on how to move past the EDR Complaint. It is highly likely the meeting was held at the instruction of a Judge or the Administrative Office. The Defendant used the opportunity to add salt to the Plaintiff's wounds.

9. At the July 13, 2015, meeting, the Defendant stated that people across the Middle District of Florida thought the Plaintiff was a nice person, but he personally thought the Plaintiff was "Nicety," a combination of nice and nasty which was a clear indication that the Defendant was insulting the Plaintiff by calling her "nasty."

10. The White male selected for a promotion over the Plaintiff only served a term of six months in the Senior United States Probation Officer position before retiring in December 2015, as planned. The Defendant failed to promote the Plaintiff from a hiring pool as he had done for other staff members. Instead, he elected to place a transfer from Puerto Rico, a White (Hispanic) female, in the Orlando office to block a promotional opportunity for the Plaintiff. The White (Hispanic) female, who had originally been slated to work in the Ft. Myers divisional office, was very unhappy in the Orlando office because she submitted a transfer request to the Ft. Myers office to be close to a beach.

11. Without notice or a reason, on November 23, 2015, the Plaintiff was removed from the Special Olympics Florida Coordinator position for the 2016 Law Enforcement Torch Run, although the Plaintiff introduced to program to the Middle District of Florida in 2009. At the 2016 District Conference, cash awards were given to employees by the Defendant that were selected by the Defendant in recognition of the program. The Plaintiff had not been given a cash award by the Defendant or the previous Chief Probation Officer for coordinating the program from 2009 to 2015. Due to the disrespect shown by the Defendant towards the Plaintiff, she removed herself from the other two committees which she was serving. Members of both the Employee

Recognition Committee and Supervision/ Evidence-Based Practices Committee also received cash awards at the 2016 District Conference as a swipe to the Plaintiff.

12. A co-worker commented to the Plaintiff that she was not "toxic' like the administrators had described. The co-worker said the administrators had instructed him and other newly hired employees not to associate with the Plaintiff.

13. On October 28, 2016, a Supervisory United States Probation Officer position posted by the Human Resources Manager. The listed position stated that presentence experience by the chosen person was preferred. The Plaintiff had completed presentence reports but did not consider herself proficient enough to supervise the presentence work of others; therefore, an application for the promotional opportunity was not submitted. On November 3, 2016, the Human Resources Manager posted a Special Offender Specialist position to replace the White (Hispanic) female who transferred back to Puerto Rico. The Plaintiff did not apply for the position because the supervisor would have been DeCarlos Sheppard who testified at the EDR Hearing that he typed an unofficial interview score sheet ranking the Plaintiff exceptionally low on the candidate list for the 2013 promotion. On December 21, 2016, it was announced to the district by email that the Indian American female was selected for the Supervisory Probation Officer position although she had no presentence experience. This selection contributed to a hostile work environment as the Indian American female was selected over a person who had experience supervising a presentence unit and a person who worked as a presentence writer for years. Also on December 21, 2016, it was announced that two White males were selected to fill Senior United States Probation Officer positions, although only one position had been advertised. The Indian American female's new position was changed to the supervision unit and one of the White males was placed in her unit. The selections appeared to be preordained by the Defendant and it appeared as thought the Defendant had carefully orchestrating the advertisements for the positions to prevent the Plaintiff from applying for either of the positions. At this point it became clear that the Defendant had no intention of ever promoting the Plaintiff which caused the Plaintiff not to submit another application for a promotion.

14. The Plaintiff was constantly harassed to train inexperienced staff members because, according to comments by supervisors and administrators, she did "very good work." A training opportunity for STARR coaches was advertised on March 1, 2017. Those selected for the coaching positions would receive benefits that included a reduced caseload, a cash award, and the opportunity to add participation in a national program to their resumes. The Petitioner was excluded from applying for one of the nineteen slots based on an unfair annual Appraisal Performance rating of "Minimally Proficient." Appraisal ratings had not a criterion before to exclude staff from serving on committees or attending training. The Plaintiff's supervisor stated that the administrators had voiced concern about the Plaintiff serving as a STARR Coach due to "past problems," which was a clear indication that the requirements for the coaching position had been carefully orchestrated to exclude the Plaintiff from a new and rewarding opportunity.

15. On May 4, 2017, the Plaintiff was a member of an interview panel for the position of United States Probation Officer. Two of the five candidates that interviewed did not meet the minimum qualifications; however, they were both selected for the position. A White male worked at a State of Florida agency with a former United States Probation Office employee. A White female worked for the Judge who oversaw the Plaintiff's EDR Hearing, United States District Judge Timothy Corrigan. The White female was not recommended for a second interview due to her total lack of qualifications, an unbelievably bad interview and two Driving Under the Influence criminal convictions. A requirement for the position included a valid driver's license as driving a motor vehicle to make community contacts is a core duty of a probation officer. The White female had a suspended driver's license. A position was created for her to work as an intake officer which did not require her to drive or make field visits, only to interview defendants at the Courthouse in the Tampa division.

16. On March 30, 2020, an email was sent to the entire staff at the Orlando division advising that the Plaintiff was being assessed for COVID-19, in violation of the Plaintiff's Health Insurance Portability and Accountability Act (HIPAA) of 1996 rights. Other courthouse employees had been assessed and received positive results, but their names were not released to other staff members.

17. On January 28, 2021, a Middle District of Florida Fraternization Policy emailed to all employees by the new Human Resources Manager. The Policy outlined much of what had been previously reported to the Court by the Plaintiff. The Policy was obviously issued in response to similar issues and behavior. The difference is that the Court believed the grievances of others but did not believe the Plaintiff's grievances or simply did not care.

Constantly having to prove yourself and held to a different standard than other has been exhausting. The Plaintiff had to constantly overcome indignities, microaggressions and credibility attacks while exhibiting unwavering strength and grace. Black women are often portrayed as strong individuals, but the label is sometimes to our detriment. The actions of the Defendant and his supervisors and other administrators caused the Plaintiff to suffer mental anguish, emotional distress, physical ailments, loss of enjoyment of life and workplace depression due to the discrimination, sexual harassment, retaliation, and a hostile work environment created by the Defendant.

Eight years of discrimination, retaliation and harassment at the United States Probation Office left the Plaintiff with compassion fatigue by watching others elevate in their careers. Although the Plaintiff had an exemplary career with the Florida Department of Corrections and United States Probation Office, an advanced degree and multiple impressive performance reviews, others with far less skills and experience received promotions and awards. The Plaintiff was constantly harassed by being asked to train inexperienced staff. Agency leaders only viewed the Plaintiff's excellent work as valid enough to assist others and improve the agency, but not a valid reason for a promotion to personally benefit the Plaintiff and her family.

The Plaintiff is seeking recovery after the Defendant violated her civil rights. The Plaintiff wishes to assert her rights and lay claim to all that the Plaintiff inherently deserves to receive, to include compensation for damages, back pay owed and future pay adjustments.