UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 21-cv-02116-ALTMAN/REID

DARLENE M. GALLOWAY,

    Plaintiff,

v.

JOSEPH CHRISTOPHER COLLINS,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court upon Defendant, Joseph Christopher Collins's Motion to Dismiss. [ECF No. 16]. The Motion was referred to the Undersigned for a Report and Recommendation by the Honorable Roy K. Altman. [ECF No. 19]. For the reasons addressed below it is **RECOMMENDED** that Defendant's Motion be **GRANTED** and the case be **DISMISSED**.

**BACKGROUND**

*Pro se* Plaintiff Darlene Galloway served as a United State Probation Officer for the United States District Court for the Middle District of Florida ("Middle District") for twenty years prior to her retirement on April 23, 2021. [ECF No. 16-1 at 1]. She brought this employment action against Defendant, the Chief United States Probation Officer for the Middle District, for alleged race, age, and gender discrimination. Plaintiff contends Defendant's discriminatory behavior stunted her professional advancement and "foster[ed] an environment of hostility" in which Defendant promoted less qualified individuals over her, in part, as retaliation for filing an

1

Employee Dispute Resolution ("EDR") Complaint of Discrimination against Defendant. [ECF No. 1 at 6].

The events giving rise to Plaintiff's claims began in 2013 after Plaintiff applied for the position of Senior United States Probation Officer. [ECF No. 1 at 6]. Plaintiff did not receive the position. [*Id.*]. She asserts Defendant "appoint[ed] a much less qualified Indian American [woman]." [*Id.*]. Plaintiff contends she was denied this promotion because the Defendant discriminated against her and consequently, on October 6, 2014, she filed an EDR Complaint of Discrimination "based on race, gender, and age (a Black female over age forty)." [*Id.* at 4, 6]. Plaintiff would go on to amend the Complaint to include a claim for retaliation, and at the final hearing Plaintiff informed the Court she had also been subjected to sexual harassment. [*Id.* at 4]. The EDR Complaint was ultimately denied following review under the EDR process which requires review by a designated district judge or judicial officer. [*Id.* at 6].

After her EDR Complaint was dismissed, things did not improve. Plaintiff contends Defendant retaliated against her for filing the EDR Complaint by excluding her from various opportunities for career advancement. [*Id.* at 6]. These actions primarily included Defendant repeatedly promoting less qualified individuals over Plaintiff because of Defendant's stated intent "not [] to reward bad behavior," referring to Plaintiff's filing the EDR Complaint. [*Id.* at 7]. She alleged this working environment continued until Plaintiff's retirement on April 23, 2021 and that Defendant's conduct led her to retire earlier than she had planned. [*Id.* at 4]. Further, Plaintiff states she did not file another EDR Complaint against Defendant before her retirement "out of fear that the Court would again take no action and only enbolden (sic) the perpetrators to become even more hostile towards [her]." [*Id.*].

Approximately eight months after her retirement Plaintiff filed this lawsuit seeking relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Section 1981" or "§ 1981"), and 42 U.S.C. § 2302 ('Section 2302" or "§ 2302"). [*Id.* at 3]. Plaintiff is seeking $565,000 in damages for mental anguish, emotional distress, loss of enjoyment of life, backpay, and "loss of income due to early retirement as recovery for punitive or exemplary damages." [*Id.* at 5].

Defendant now seeks to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for failure to state a claim under Rule 12(b)(6), and as an impermissible shotgun pleading. *See generally* [ECF No. 16]. Plaintiff filed no Response to Defendant's Motion to Dismiss.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that a complaint may be dismissed both for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

A party bringing a Rule 12(b)(1) motion challenges the court's subject matter jurisdiction to hear a case. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 1990). A Rule 12(b)(1) motion comes in two forms: a "facial attack" or a "factual attack." *Id.* A facial attack merely requires the court to "see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the plaintiff's] complaint are taken as true for the purposes of the motion." *Id.* (internal quotation marks and citation omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008).

Rule 8(a)(2) states that a complaint must provide "a short and plain state of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve this end, pleadings must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-harmed-me accusation." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Mohamed v. Palestinian Auth.*, 566 U.S. 449 (2012). Rather, the plausibility "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). In reviewing a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Courts, however, are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Where a defendant challenges the complaint under both Rules 12(b)(1) and 12(b)(6) the jurisdiction inquiry and merits inquiry may overlap. *Brownback v. King*, 141 S. Ct. 740, 749 n.8 (2021). "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Id.* Where, however, the court lacks subject matter jurisdiction for a non-merits reason, it should dismiss the case under Rule 12(b)(1). *Id.*; *see also Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).

Further, where, as here, a plaintiff is proceeding *pro se*, their pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by an attorney. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *see also Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998). Notwithstanding, "this leniency does not give a court license to serve as de facto counsel for a party … or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## DISCUSSION

Defendant raises five arguments in support of his Motion to Dismiss: (1) Plaintiff's Complaint constitutes an impermissible shotgun pleading; (2) the Middle District's EDR plan "provided the exclusive remedy for Plaintiff's action"; (3) "Title VII provides no remedy to [federal judiciary] employees such as Plaintiff who do not fall within the competitive service"; (4) 42 U.S.C. § 1981a does not provide a cause of action to federal employees such as Plaintiff; and (5) 42 U.S.C. § 2302 "is not available to employees of the federal courts such as Plaintiff." [ECF No. 16 at 1–2]. Other than the question of whether the Complaint constitutes an impermissible shotgun pleading, these arguments can be reduced to a single question: whether the Middle

District's EDR Plan was the exclusive path for Plaintiff to seek redress for her claims against Defendant? Because the answer to this question is yes, Plaintiff's claims should be dismissed.

In *Lee v. Hughes*, the Eleventh Circuit has already acknowledged that federal probation officers are not afforded a judicial remedy in the federal courts for employment discrimination claims. 145 F.3d 1272, 1276 (11th Cir. 1998). The plaintiff, a former United States Probation Officer, contended that his termination was improperly motivated by racial discrimination. *Id.* at 1273. After the plaintiff's EEO (equivalent to EDR) complaint was dismissed, the plaintiff filed suit "against his supervisors in their individual capacities asserting a *Bivens* claim for alleged racial discrimination and alleging a violation of § 1981." *Id.* at 1274. Ultimately, the *Lee* court agreed with the lower court's conclusion that "the [Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*,] is the exclusive vehicle through which federal employees can challenge or remedy adverse personnel decisions, even under circumstances in which the CSRA does not provide for administrative or judicial review of the personnel decision at issue." *Id.* Although the plaintiff there asserted a *Bivens*[1] and § 1981 action, the Eleventh Circuit dismissed the claims under Rule 12(b)(6) primarily because "the CSRA's comprehensive remedial provisions convince us that there no was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violated a subordinate's constitutional rights." *Id.* at 1276–77 (quoting *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991)).

In *Dotson v. Griesa*, the Second Circuit discussed in depth the history and the reasons federal courts' internal EDR Plans are the sole remedy available to federal judiciary employees, like Plaintiff. 398 F.3d 156 (2d Cir. 2005). For decades "the judiciary's own comprehensive procedures for review of adverse employment actions…. have been modified and refined … to

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

balance the dual concerns for fair treatment of employees and efficient judicial administration." *Id.* at 171–72. Thus, much of the federal judiciary's own policies mirror "the equal employment opportunity principles applicable to private sector and government employers." *Id.* at 172. To help achieve this end "the Judicial Conference [of the United States] developed a Model Equal Employment Opportunity Plan and, by resolution, required federal courts to adopt EEO plans in conformance with the national policy of providing equal employment opportunity to all persons regardless of their race, sex, color, national origin, religion, age … or handicap." *Id.* (internal quotation marks and citation omitted). The Model Plan, which was eventually adopted by each federal court, includes "the right to seek timely redress of discrimination complaints." *Id.* (internal quotation marks and citation omitted).

As the *Dotson* court noted, in a remarkably similar case involving an African-American probation officer alleging race discrimination, these internal grievance procedures have resulted in Congress, in most instances, exempting federal judiciary employees from legislation which provide employment rights and remedies to other federal civil service employees. For example, the CSRA affords federal civil service employees "an integrated scheme of administrative and judicial review for adverse employment actions." *Dotson*, 398 F.3d at 163. "The detailed protections and remedies afforded federal civil servants by the CSRA do not apply uniformly to all covered employees." *Id.* Instead, whether a federal employee is covered by the CSRA depends on whether the employee is classified as a member of the senior executive service, the competitive service, or the excepted service. *Id.* Pertinent here, "employees of the judicial branch, including probation officers … qualify as excepted service personnel." *Id.*

As the *Dotson* court painstakingly explained "while the CSRA meticulously categorizes the thousands of federal civil service employees into three categories and provides a detailed and

comprehensive means for addressing their employment grievances, it provides no administrative or judicial review right for non-preference eligible excepted service personnel serving in the judicial branch." *Id.* at 165; *see also Lee*, 145 F.3d at 1276 (concluding the plaintiff, a United States Probation Officer, had no cause of action under the CSRA for alleged employment discrimination because "Congress deliberately excluded certain employees from the provision establishing administrative and judicial review of adverse personnel actions"); *In re Levenson*, 587 F.3d 925, 935 (9th Cir. 2009) (noting the complainant "like most other employees of the federal judiciary, has no remedies under the Civil Service Reform Act, is not covered by Title VII of the Civil Rights Act, and cannot bring a *Bivens* action to challenge unconstitutional discrimination in the workplace").

The same holds true for the Congressional Accountability Act of 1995 ("CAA"), § 1301, *et seq.*, which applied numerous employment statutes, including Title VII, to the legislative branch of the federal government. *Dotson*, 398 F.3d at 172–76. Although Congress considered extending the CAA to the judiciary, it specifically decided against doing so to preserve the judiciary's autonomy. *Id.* at 173. In lieu of extending the CAA to the judiciary, Congress tasked the Judicial Conference with preparing a report regarding the application of the CAA to the judiciary. *In re Golinski*, 587 F.3d 956, 962–63 (9th Cir. 2009). Although the Judicial Conference concluded the CAA need not be applied to the judiciary because it "provides its employees with protections similar to those … in the CAA," the Judicial Conference "proposed to review and revise its Model EEO Plan to afford judicial employees review procedures similar to those adopted by Congress." *Dotson*, 398 F.3d at 174. Therefore, the Judicial Conference "concluded that in light of both this proposal and the judiciary's history of administrative review, no legislative action was necessary to ensure the rights of judicial branch employees[.]" *Id.*

Notably, Congress has not changed this decision. Courts have concluded that Congress's decision to preclude the CAA's application to the judiciary was not inadvertent, but rather "a conscious and rational choice made and maintained over the years in light of both a proper regard for judicial independence and recognition of the judiciary's own comprehensive procedures for adverse employment actions, including review by judicial officers." *Id.* at 176; *see also Golinski*, 587 F.3d at 963 (positing that since "Congress took no further action … it must have been satisfied with the Judiciary's efforts"). Courts that have addressed this issue agree Congress deliberately excepted the judiciary from these statutes because judicial review of claims of employment discrimination is already built into the EDR system. *See Dotson*, 398 F.3d at 176; *Lee*, at 1276–77; *Golinski*, 587 F.3d at 963. The Middle District is no exception.

As with other District Courts, the Middle District has implemented its own EDR Plan based on the Judicial Conference's Model EDR Plan. The Middle District's EDR Plan served as the exclusive remedy for Plaintiff's employment discrimination claims. In fact, this was something Plaintiff likely was, or reasonably should have been aware of. Notably, Plaintiff had already availed herself of the EDR system in 2014 when she filed a complaint of discrimination against Defendant. Therefore, Plaintiff was familiar with EDR and its procedures.

Additionally, the Middle District's EDR Plan states in no uncertain terms that the "Plan is the exclusive means for an employee to seek redress of the rights covered by the Plan…. [and serves] in lieu of any other legal or equitable remedy with respect to the rights subject under the Plan." [ECF Nos. 16-2 at 2; 16-3 at 2]. The EDR Plan explains that among the rights it affords is the prohibition of adverse employment actions arising out of discrimination against an employee based on race, color, religion, sex, sexual harassment, national origin, or disability. *See generally*

*id.* Additionally, the EDR Plan lays out a clear grievance procedure a complainant is to follow when filing a complaint.

Given Congress's clear intent to leave matters such as Plaintiff's discrimination claims exclusively to federal courts' own EDR procedures, Plaintiff's claims cannot proceed. Had Plaintiff wished to address Defendant's alleged retaliatory behavior following the dismissal of her 2014 EDR Complaint, she was required to file another EDR Complaint. She failed to do so. As Plaintiff has failed to state a plausible claim for relief under any of the statutes she has invoked, Plaintiff's Complaint should be dismissed under Rule 12(b)(6). *See Lee*, 145 F.3d at 1277 n.6.

As an aside, although Plaintiff's Complaint must be dismissed because of the exclusivity of the EDR Plan, it should also be noted that Plaintiff's § 1981 claim is subject to dismissal because the statute does not apply to federal employees. *See, e.g., Dotson*, 398 F.3d at 160 (concluding that the plaintiff's "§ 1981 claim is legally defective because that statute applies only to person acting under color of state, not federal, law"); *Lee*, 145 F.3d at 1277 (noting that "the language of § 1981 is clear: Section 1981 provides a cause of action for individuals subjected to discrimination by private actors and discrimination under color of state law, but does not provide a cause of action for discrimination under color of federal law"); *McCluney v. Geren*, No. 1:08-CV-01097-HGD, 2010 WL 11615032, at *11 (N.D. Ala. Sept. 15, 2010) (same); *Nicholson v. Johanns*, 511 F. Supp. 2d 1193, 1195–96 (S.D. Ala. 2007) (same). Plaintiff's § 2302 claim would fare no better because the statute does not apply to employees of the federal judiciary because the judiciary does not constitute an agency as defined by the statute. *See, e.g., Hartman v. Merit Sys. Prot. Bd.*, 77 F.3d 1378, 1381 (Fed. Cir. 1996); *Scholl v. United States*, 61 Fed. Cl. 322, 325 (2004).

Additionally, because it is clear Plaintiff's claims are subject to dismissal, the Court need not reach the question of whether Plaintiff's Complaint constitutes an impermissible shotgun pleading. Defendant's challenges under Rule 12(b)(1) and 12(b)(6) foreclose Plaintiff claims.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss [ECF No. 16] be **GRANTED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 25th day of October, 2022.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:  **United States District Judge Roy K. Altman;**

     **Counsel of Record**

     **Darlene Galloway,** *Pro Se*
     **PO Box 560605**
     **Orlando, FL 32856-0605**